IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | 1:21-CR-191 (AT) |
| ) | |
| DAYNA JOY LIVERMAN. ) | |
| _____ ) | |

**SENTENCING MEMO**

COMES NOW DAYNA JOY LIVERMAN, by and through counsel, and files this memo to be considered by this Honorable Court in conjunction with her Presentence Report (PSR), the plea agreement, the psychological summary report from Dr. Adriana Flores, and all arguments and allocution to be put forth at her sentencing hearing on **Tuesday, March 22, 2022**. Ms. Liverman asks that this information be used to fashion a non-custodial sentence which comports with the requirements of 18 U.S.C. §3553(a) and which is otherwise reasonable.

*INTRODUCTION AND UPDATES:*

DAYNA JOY LIVERMAN is now 32 years old. At the time of her offense she was 25. Ms. Liverman was raised in the suburbs of Detroit, Michigan. Her early life was on many levels bucolic and middle-class. Her parents had a nice home with a pool. When she was 12, her father fell victim to a fraud. They lost

their family home, bounced around to apartments and rental units, and were at times homeless. She now lives with her mother in downtown Detroit and works for a Cadillac / GM dealership. Ms. Liverman continues to provide support and companionship to her mother, STEPHANIE LIVERMAN, after her father, LAKE LIVERMAN, passed away on November 22, 2020[1], following a battle with cancer.

Ms. Liverman has lived most her life in the Detroit area with the exception of two moves to California, both of which ended badly. Her first foray to California ended in 2015 when she met MARIO JACKSON, the lead defendant in 1:15 CR 284 (AT), on the streets of Las Vegas during a weekend vacation trip. This chance meeting and subsequent whirlwind romance with Jackson brought Ms. Liverman to Atlanta, to a series of humiliating and abusive events, and ultimately to the crime this case. As also shall be discussed, her second move to California ended in 2019 with Ms. Liverman being arrested and almost having her bond in this case revoked.

On May 12, 2021, Ms. Liverman plead guilty to one count of being a criminal accessory in violation of 18 USC §3. She admitted she drove Mario Jackson and Leon Scott to and from what turned out to be a horrific home-invasion robbery of a Buckhead family. Ms. Liverman agreed to cooperate with

---

[1](See Exhibit 1, Lake Liverman obituary).

2

the Government and was prepared to testify against Mario Jackson, however he entered a binding guilty plea to serve 25 years, and her live testimony was not required. This case is Ms. Liverman's first felony conviction.

*Updates*:

A) *Successful Participation in Psychological Counseling*. In 2019, Ms. Liverman was arrested in Los Angeles and appeared before Judge Vineyard in Atlanta for bond revocation proceedings. PSR Paragraphs 8 and 60 describe Ms. Liverman's less-than-stellar compliance with counseling in California *prior* to the revocation petition[2]. The PSR does not include updated information regarding Ms. Liverman's successful counseling sessions since her return to Detroit in 2019. Specifically, since June of 2019, Ms. Liverman has attended counseling sessions with SUMMER MADDEN, MA, TLLP, a clinical psychologist contracted by United States Probation / Pretrial in Detroit[3]. Until recently, Ms. Liverman had counseling sessions every two weeks. Two months ago, her counseling visits was reduced to once-a-month. Ms. Liverman continues to take Adderal for ADHD as

---

[2] Counsel confirmed with the PSR writer that information in these paragraphs only described Ms. Liverman's efforts in California, prior to the 2019 revocation petition.

[3] Ms. Liverman's supervising probation officer in Detroit is Officer DEMETRIUS HARDY. By email on 3/17/2022 he reports, "**Ms. Liverman is in compliance and there are no issues to report. She continues to participate in mental health treatment with positive adjustment.**"

prescribed.

B) *Employment Update*. Ms. Liverman worked for Centria Health Care as a certified nurse's assistant (CNA) from August of 2020 through October of 2021. While she remains "listed" or available for nursing-duty shifts through Centria, in November of 2021, Ms. Liverman began employment with Prestige Cadillac GM in Detroit. After completing an intensive training program at GM, she now works 40 to 60 hours a week selling cars. (See attached pay stubs, "Exhibit 6").

C) *Stephanie Liverman.* The PSR indicates the probation officer was unable to contact Ms. Liverman's mother. (PSR ¶52). Stephanie Liverman is a retired public school teacher with over 20 years teaching experience. She and her husband previously appeared twice, in-person, in this district for their daughter's hearings. Stephanie Liverman will attend sentencing and address the Court about her daughter's history, characteristics and progress through this lengthy and stressful criminal process.

### *Mario Jackson is a violent and master manipulator.*

As the Court is well aware, Mario Jackson is dangerous manipulator. His skills were not only in robbing wealthy families of high-end clothing and jewelry. He also managed / "pimped" women for prostitution. His ability to manipulate, "turn" and control others was quite remarkable. He promised Ms. Liverman

professional advancement and love. He flew her to Atlanta for "his birthday." He put her in a fancy hotel and lavished her with gifts, but soon began threatening her with violence including burning with a hot iron. Next thing she knew, Ms. Liverman was driving his prostitutes to their "dates."

As Dr. Flores noted in her psychological report:

> Ms. Liverman became depressed while residing in Los Angeles, California, prior to meeting Mr. Jackson. She had moved to Los Angeles to advance in her career as a fashion stylist. ... [S]he struggled financially and emotionally. Unable to afford supporting herself, she ended up at homeless shelters and engaging in risky relationships in order to provide for herself. It was during this period of time that she met Mr. Jackson.
>
> Reportedly, Mr. Jackson portrayed himself to Ms. Liverman as an individual with significant, important connections in the fashion industry in Los Angeles who offered to help Ms. Liverman advance her career. Her association with Mr. Jackson occurred during a "perfect storm." She was depressed, desperate to succeed (in part her family dynamics explain the need to succeed), and it appears she believed Mr. Jackson's deceit. At the time, Ms. Liverman was primed for exploitation and manipulation by others.
>
> Her relationship with Mr. Jackson was abusive and traumatic such that she meets diagnostic criteria for *Posttraumatic Stress Disorder* (PTSD) due to physical, verbal, and emotional abuse by Mr. Jackson. Ms. Liverman's judgment was so impaired that, even after enduring Mr. Jackson's violent behavior (including having a gun pointed at her and a being threatened with a hot iron), she remained with him because she believed he was the key to her career success. It was only during this evaluation, as Ms. Liverman recounted Mr. Jackson's traumatizing her and her current PTSD symptoms, that she appears to have grasped that what she experienced was, in fact, out of the norm, and considered traumatic.

(*See* Dr. Flores' summary report dated February 17, 2017, attached to PSR).

I) <u>SENTENCING GUIDELINE ISSUES</u>.

**A) (PSR ¶ 36) - The underlying robbery specific offense characteristics.**

The Base Offense Level for Robbery is 20. USSG §2B3.1 (a). Six (6) levels are reduced because Ms. Liverman was convicted of being an accessory after the fact. USSG §2X3.1 (a)(1). Her base offense level should be 14, not 21.

Ms. Liverman objects to the 2-level specific offense characteristic enhancement for restraint of victims under USSG § 2B3.1 (b)(1). She lacked knowledge that victims would be restrained, and the restraint of victims was not reasonably known to her after the fact or before.

USSG §1B1.3, <u>Application Note 9</u>, reads as follows:

> 9. *Solicitation, Misprision, or Accessory After the Fact*. In the case of solicitation, misprision, or accessory after the fact, the conduct for which the defendant is accountable includes all conduct relevant to determining the offense level for the underlying offense that was known, or reasonably should have been known, by the defendant.

*Id.*

Similarly, <u>Application Note</u> 1 to USSG §2X3.1 requires that only Specific Offense Characteristics which were known or reasonably known by the defendant be applied. *Id.*

6

Ms. Liverman also objects to the 5-level firearm specific offense characteristic enhancement under USSG § 2B3.1(b)(2), and submits there is insufficient evidence[1] to find that the brandishing and possession of firearms by Jackson and Scott on May 25, 2015, was within the scope of Ms. Liverman's agreement or reasonably known to her.[4]

As contemplated by the parties many years ago, Ms. Liverman's base offense level should be 14.

### B) Request for Downward Departure Pursuant to USSG § 5K2.12

During their short-lived courtship, Mario Jackson subjected Ms. Liverman to physical and psychological coercion and duress.  He swooped her off the streets of Las Vegas.  He showed her a lavish life-style full of expensive clothes and material objects.  He promised to support her in her business ventures:  she could be a stylist for rappers and people that he knew, he could help her run a hair-selling business.  He could "introduce her to important people in Atlanta and LA." He wined and dined.  He paid for her flight to Atlanta, picked her up in a nice car and gave her expensive bottles of perfume and alcohol.  But soon, he was having sex with others in the adjacent bed, threatening her with a hot iron and a gun, and

---

[4] Evidence proffered by Ms. Liverman pursuant to Rule 11 plea negotiations, Rule 410 or USSG §1B1.8 should not be considered to support this enhancement.

making her drive his prostitutes around Atlanta. He threw water on her when she fell asleep in the car. He told her things like, "I own you." "This is my town." "You gotta earn your keep." He made her drive - his prostitutes around Atlanta, himself and Leon Scott to the Buckhead residence, then on to Memphis, and last to Miami, where she finally mustered the courage (and plan) to escape from him.

The Sentencing Guidelines authorize a downward departure given the facts of this case:

> If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may depart downward. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions, on the proportionality of the defendant's actions to the seriousness of coercion, blackmail, or duress involved, and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be. Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency.

USSG § 5K2.12.

**C) Motion for Downward Departure Pursuant to USSG § 5K1.1.**

Ms. Liverman's cooperation with the government was substantial assistance in the investigation and prosecution of others which contributed to the decision of

8

Mario Jackson to plead guilty. She provided a detailed written proffer to the government back in 2018. In 2021, she was prepared to testify truthfully against Mario Jackson, and prepped by defense counsel and in a Zoom interview with AUSA's. Ms. Liverman should receive a motion for sentence reduction pursuant to USSG § 5K1.1. She has lived for years with the fear that Mario Jackson or his relatives or associates will reach out and seek revenge against her or her family.

## II) REQUEST FOR A REASONABLE AND LOWER SENTENCE:

As authorized by Title 18 USC § 3553 (a) and *United States v. Booker*, 125 S.Ct. 738 (2005), Ms. Liverman requests a non-custodial sentence, lower than the advisory guidelines based upon the following reasons:

**1) The Nature of the Offense.** Ms. Liverman pled guilty to one count of being a criminal accessory. As a vulnerable 25 year old young woman suffering from depression, she drove Mario Jackson and Leon Scott to a neighborhood in Buckhead and picked them up when summoned to do so. She was connected to one (1) horrific, home-invasion robbery. Some of her codefendant "drivers" were connected to two (2) robberies. (PSR ¶17-20).

**2) The History and Characteristics of the Defendant.** This is Ms. Liverman's first felony offense and her criminal history score is zero. (PSR ¶ 47).

As Dr. Flores' report makes clear, Ms. Liverman has experienced substantial emotional trauma, both, in the events surrounding this case which included depression and PTSD, as well as during her circuitous journey into adulthood.

a) Incorporating her request for a departure under USSG §5K2.12, Ms. Liverman notes the physical and mental trauma, threats, coercion, duress and manipulation she experienced at the hands of Mario Jackson when she was 25 years old, during the period of time surrounding her offense, are also legitimate grounds for a downward variance.

b) Ms. Liverman also experienced significant stress and trauma as a child when her father was swindled out of the family home. It is clear Ms. Liverman, like most Americans, desires a nice life and nice life-style. Her decision-making in reaching for these goals has not always been good or realistic, and unfortunately she allowed herself to end up in some very bad and dangerous situations. Her desperation for financial and material success is likely a result of having a nice home and life until age 12, but losing it all.






(Photos of Dayna Joy Liverman, family and childhood home in Michigan)




11

c) Ms. Liverman has lived under much stress and fear these last 6 years, almost 7. Not only fear of Mario Jackson, but the fear and stress inherently brought on by a federal prosecution. During this long haul she has not been perfect, but she is on the right track. While she is grateful that she has been allowed to remain on bond, the case has taken its toll on her and her family. On the bright side, she has grown up a lot in the last six years. At 25, she was not far from being a child. At 32, she is truly a grown-up.

As several people who have known Ms. Liverman wrote to Judge Vineyard back in 2019, Ms. Liverman is a creative, talented and hard-working woman. She is loyal to and supportive of her family members. Part of what took her to California was a desire to help support her disabled brother and his young son, as they went through a divorce. To a fault, Dayna Liverman is self-sacrificing and giving. (See Exhibits 2-5, letters hereto attached).

### 3) The Need for the Sentence to Reflect the Seriousness of the Offense and Provide Adequate Detergence.

Ms. Liverman has been under pretrial supervision by U.S. Probation for almost 6 years. She spent 6 months under home confinement and wore a location monitor for 12 months. A non-custodial sentence is appropriate and reasonable, and adequately reflects the seriousness of Ms. Liverman's offense, her first felony. In light of the case history and Ms. Liverman's cooperation, this sentence will

deter others similarly situated.

### 4) The Need for the Sentence to Avoid Unwarranted Disparities.

Given that Ms. Liverman only drove to one robbery, while some codefendants drove Mario Jackson to multiple robberies, Ms. Liverman should receive a lesser non-custodial sentence.

WHEREBY, based upon the above, DAYNA JOY LIVERMAN requests that this Honorable Court grant her a reasonable non-custodial sentence with a condition of supervision that she must continue to reside with or near her mother in Detroit, Michigan.

Dated:  This 17th<sup>th</sup> day of March, 2022.

Respectfully submitted,

*L. Burton Finlayson*

_____
L. BURTON FINLAYSON
Attorney For DAYNA JOY LIVERMAN
Georgia Bar Number: 261460

LAW OFFICE OF
L. BURTON FINLAYSON
ATTORNEY AT LAW
931 Ponce de Leon Avenue, NE
Atlanta, Georgia 30306
(404) 872-0560
LBFCOURTS@aol.com

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing

Sentencing Memo upon the following:

>Ryan Buchanan
>Assistant United States Attorney
>600 U.S. Courthouse
>75 Ted Turner Drive, S. W.
>Atlanta, Georgia  30303

by CM/ ECF delivery.

>DATED:  This 17th day of March, 2022.

>*L. Burton Finlayson*
>_____
>L. BURTON FINLAYSON
>ATTORNEY FOR DAYNA JOY LIVERMAN
>State Bar Number: 261460